# EXHIBIT A

# CHAMPAIGN COUNTY COURT OF COMMON PLEAS
## URBANA, OHIO 43078

## SUMMONS ON COMPLAINT
Rule 4 1970 Ohio Rules of Civil Procedure

DEBORAH L THORNBURG et al
PLAINTIFF

vs.

OCWEN LOAN SERVICING LLC et al
DEFENDANT                **Case No. 2014 CV 00074**

**To:**   LITTON LOAN SERVICING LP
C/O CSC LAWYERS INCORPORATING SERVICE
CORPORATION SERVICE COMPANY
50 W BROAD STREET SUITE 1800
COLUMBUS, OH 43215

You are hereby summoned that a complaint ( a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff ('s') attorney, or upon the plaintiff (s) if he/she/they has/ have no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on plaintiff(s) attorney.

The name and address of the plaintiff ('s') attorney is as follows:
**STEVEN ROSS FANSLER**
**212 NORTH DETROIT STREET**
**P O BOX 764**
**WEST LIBERTY, OH  43357**

If you fail to appear and defend, judgment  by default will be taken against you for the relief demanded in the complaint.

PENNY S. UNDERWOOD<br>Champaign County Clerk of Courts<br><br>Deputy

April 25, 2014
cc:   OCWEN LOAN SERVICING LLC
NOVASTAR MORTGAGE INC

## IN THE COURT OF COMMON PLEAS OF CHAMPAIGN COUNTY, OHIO

DEBORAH L. THORNBURG,
s/k/a DEBBIE WICKLINE
121 South High Street
St. Paris, Ohio 43072

      and

TIMOTHY THORNBURG
121 South High Street
St. Paris, Ohio 43072,

           PLAINTIFFS,           CASE NO. **'14 CV 74**

      -vs-                 Judge Nick A. Selvaggio

OCWEN LOAN SERVICING, LLC         **COMPLAINT**
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

      and

NOVASTAR MORTGAGE, INC.
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

      and

LITTON LOAN SERVICING, L.P.
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215,

           DEFENDANTS.

FILED
2014 APR 25 AM 10: 11
PENNY S. UNDERWOOD
COMMON PLEAS COURT
CHAMPAIGN COUNTY OHIO

<u>FACTS RELEVANT TO ALL CAUSES OF ACTION HEREIN</u>

1.      Deborah L. Thornburg, formerly known as Debbie Wickline, is the owner of real

estate described as follows:

File Number: 1990295

Tract III: situated in the county of Champaign in the State of Ohio and in the Village of St. Paris and being a part of Lot 2 of S.T. McMorran's Addition the the Village of St. Paris, as recorded in Plat Book B, page 113, and further bounded and described as follows:

Beginning at an iron pin found at the Northwest corner of the intersection of Jefferson Street and College Street; thence North 90 deg. 09' 45" West for 115.17' along the North line of college Street to an iron pin set at the Southeast corner of Lot 2; thence North 6 deg. 18' 55" East for 131.79' along the East line of Lot 2 an iron pin set marking the place of beginning; thence North 89 deg. 90' 45" West for 110.96' to an iron pin set on the West line of Lot 2 and the East line of Monroe Street; thence North 7 deg. 11' 55" East for 108.73' along said lot line and street line to an iron pin set at the Northwest corner of Lot 2; thence South 81 deg. 44' East for 108.85' along the North line of Lot 2 to an iron pin set at the Northeast corner of Lot 2; thence South 6 deg. 18' 55" West for 94.55' along the East line of Lot 2 to the iron pin marking the true place of beginning. Containing a total of 0.256 acres and subject to all legal assessments, rights of way and restrictions of record.

Tract IV:   Situate in the Village of St. Paris, in the County of Champaign and State of Ohio and bounded and described as follows:

Being Lot Number Five (5) of the S.T. McMorran's Addition as recorded in Plat Book B, page 113 of the Plat Records of Champaign County, Ohio.

Parcel No.: F20-24-00-01-27-004-00
             F20-24-00-01-27-008-00

2.      Timothy Thornburg is the spouse of Deborah L. Thornburg and, as such, has dower rights in the property in question.

3.      Timothy Thornburg has not signed any promissory note or any other obligations to any of the Defendants herein.

4.      When Deborah L. Thornburg signed closing documents originally with Defendant, Novastar, she was a single person.

5.      On or about April 16, 1999, Plaintiff, Deborah L. Thornburg, then known as Debbie Wickline, procured a mortgage with Novastar Mortgage, Inc. A copy of the mortgage is

-2-

attached, marked Exhibit A, and incorporated herein by reference. The loan was assigned from Novastar Mortgage, Inc. to Defendant Litton Loan Servicing, L.P.

6.      Ultimate the loan was assigned to Ocwen Loan Servicing, LLC, which now purports to be the entity responsible for servicing this loan.

## FIRST CAUSE OF ACTION

7.      Plaintiffs incorporate each and every allegation contained in the "Common Facts" set forth above as though rewritten in this cause of action.

8.      All matters relating to transactions complained of in this cause of action happened in Champaign County, Ohio.

9.      At the time the loan occurred, Defendants, Novastar Mortgage, Inc. and/or Litton Loan Servicing, L.P., failed to give Plaintiff, Deborah L. Thornburg, a copy of all documents associated with the closing.

10.      At the closing, Defendant, Novastar Mortgage, Inc. and/or Litton Loan Servicing, L.P., failed to disclose the terms relating to interest, total amount of money to be paid under the terms of the loan, the basis by which interest rates could change, and the appropriate application of payments to principal and interest.

11.      At the time of the loan, Defendant, Novastar and/or Litton, failed to disclose the terms under which the outstanding principal balance could increase over the life of the loan.

12.      At the time of the closing, Defendant, Novastar and/or Litton, failed to disclose to Plaintiff the terms and conditions under which the interest rate could change during the life of the loan.

13.      At the closing, Defendant, Novastar and/or Litton, failed to disclose to Plaintiff a complete amortization schedule showing the application of each payment to principal and interest and showing the applicable payoff at any given time.

14.      At the time of the loan, Defendant, Novastar and/or Litton, failed to give Plaintiff the appropriate and competitive interest rate based upon her credit standing at the time and based upon the prevailing loan conditions.

## SECOND CAUSE OF ACTION

15.      Plaintiff, Deborah L. Thornburg, incorporates each and every allegation contained in the common facts and the First Cause of Action as though fully rewritten herein as a part of

this cause of action.

16.     Defendant, Novastar, assigned and/or transferred the loan to other parties including, but not limited to, Litton Loan Servicing, L.P., after the closing with Plaintiff.

17.     At some point Ocwen is or claims to be the loan servicer for this loan.

18.     After Ocwen became the loan servicer for the account, Ocwen took steps which ruined, lessened, or otherwise negatively impacted upon the creditworthiness of Plaintiff, Deborah L. Thornburg, also known as Debbie Wickline.

19.     Actions taken by Ocwen include notice to Plaintiff of an intent to foreclose on the property, notwithstanding the fact that Plaintiff was not delinquent on the loan and was never delinquent at any time during the course of her loan while being serviced by Ocwen.

20.     At some point after Ocwen acquired the servicing of the loan, Ocwen indicated that the bankruptcy on the part of Plaintiff prevented refinancing or modification, even though Plaintiff had no bankruptcy at any time frame recognizable by Ohio's consumer credit laws so as to impact either her creditworthiness or her loan abilities.

21.     Sometime after Ocwen acquired servicing of the loan, Ocwen sent notification to Plaintiff that she did not have proper insurance coverage, although she had insurance coverage at all times and the insurance coverage did not change or lapse.

22.     These actions by Ocwen somehow were reported to credit reporting agencies, thereby lowering the credit score and the creditworthiness of Plaintiff, even though none of these allegations had a basis in fact.

23.     Plaintiff has at all times been of the understanding that as of May 2014 she was required to refinance the original note under the terms of the original note.

24.     When Plaintiff recently went to a local bank to obtain refinancing, her refinancing application was rebuffed because of the report of a bankruptcy and reports of insufficient credit history relating to the loan.

25.     These actions of Ocwen have specifically prohibited and lowered the chances of Plaintiff obtaining refinancing because of the impact of these allegations upon her credit score.

26.     Ocwen knew or should have known that the allegations and statements and representations it was making were not true and had no basis in fact.

-4-

27.     Ocwen knew or should have known that the making of the statements and allegations, notwithstanding the lack of truth in them, would have a negative impact upon Plaintiff and her ability to refinance.

28.     The ability of Plaintiff to procure financing to meet the balloon payment date called for in the note has been directly and negatively impacted by actions of Defendant, Ocwen, so that she is having difficulty obtaining the loan, which would have easily been obtainable but for the actions of Ocwen.

29.     Plaintiff has been damaged by the actions of Defendant, Ocwen, in an amount to be determined upon further hearing.

### THIRD CAUSE OF ACTION

30.     Plaintiff, Deborah L. Thornburg, hereby incorporates each and every allegation contained in the common facts and the first two causes of action as though rewritten in this cause of action.

31.     Plaintiff has requested personally and through counsel, and through counsel with a Power of Attorney, to have copies of all relevant documents supplied to her so that she could evaluate the loan and the payoff.

32.     Despite repeated requests, Ocwen has sent a copy of the mortgage but has failed at any time to supply a copy of the promissory note, any other closing documents, any appreciable or understandable amortization schedule, any history of the loan from the inception until an alleged payoff date, any claimed mispayments, deficiencies, errors, or failure to make payment, or other requested documents.

33.     Despite a request for such information, Ocwen has failed to produce any documentation utilized by the company in making a claim that a bankruptcy had an impact upon her loan or her creditworthiness.

34.     Despite being requested to do so, Ocwen has failed and refused to show a basis for its letter threatening foreclosure against Plaintiff.

35.     Despite a request to do so, Ocwen has failed to supply proof that it had a reasonable basis to believe that insurance had lapsed on the loan in question.

36.     Despite a request to do so, Ocwen has failed to send any documentation relating to loan modifications, notwithstanding their logo on correspondence "helping homeowners is

what we do", notwithstanding written policies indicating that loan modifications are an option or may be available.

37.    Ocwen's failure to cooperate in all of these ways has prohibited Plaintiff's attempt to refinance, to know the payoff figure and how that figure may have been reached by Ocwen or its predecessors.

38.    Ocwen's failure to produce the original loan documents or any subsequent loan documents has resulted in an inability on the part of Plaintiff to determine whether any payoff figures given by Ocwen are based on fact or based upon the documents underlying Plaintiff's loan transaction.

FOURTH CAUSE OF ACTION

39.    Plaintiff hereby restates each and every allegation contained in the common facts and the first, second, and third causes of actions as though rewritten herein.

40.    The actions of Ocwen in making material misrepresentations and publishing the same are malicious, fraudulent, violation of consumer protection laws, both in Ohio and pursuant to federal regulation.    Malicious and fraudulent action on the part of Ocwen is the basis for punitive damages, attorney fees, and treble damages.

Plaintiffs pray the Court as follows:

A.    That Defendant Ocwen be required to supply the original loan documentation and entire credit history thereafter and other information necessary to determine a proper payoff of the loan.

B.    That the May 1, 2014, refinance date not be held against Plaintiff because of her inability to refinance by that date is strictly and wholly attributable to the actions of Ocwen.

C.    That the Court accept in escrow payments due under the terms of this mortgage on or after May 1, 2014, so as to prevent her from falling behind and otherwise creating either an acceleration of the amount due and payable or any other default under the terms of her loan until this matter can be straightened out.

D.    For damages in an amount exceeding Twenty-Five Thousand Dollars ($25,000.00), both actual and punitive, as well as her attorney fees, the costs of this action, and any and all other relief which appears reasonable in the premises.

-6-

Respectfully submitted,

Steven R. Fansler (#0000644)
212 N. Detroit Street
P. O. Box 764
West Liberty, Ohio 43357-0764
Phone: (937) 465-5056
Fax: (937) 465-9880
Email:  sfanslerlaw@ctcn.net
Attorney for Plaintiffs

APR-16-98 07:11    FROM-NOVA STAR                                    T-540  P.07/36  F-733

*30647749*

*EXHIBIT A*

When recorded mail to:
NOVASTAR MORTGAGE, INC.
ATTN: COLLATERAL CONTROL
23046 AVE. DE LA CARLOTA, 3FL
LAGUNA HILLS, CA 92653

*829 3367*

9900003362
Filed for Record in
CHAMPAIGN COUNTY, OHIO
CAROLYN J DOWNING
On 05-03-1999 At 01:29 pm.
MORTGAGE              34.00
Book OR Vol.  274 Pg.    5 -  11

Title Order No.: 1990295
LOAN #: 99-002401
Escrow No.: 1990295

―――――――――――――――― [Space Above This Line For Recording Data] ――――――――――

# OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on    **APRIL 16, 1999.**       The mortgagor is
**DEBBIE WICKLINE, *UNMARRIED***

whose current mailing address is
**121 SOUTH HIGH STREET
SAINT PARIS, OH 43072**                                                    ("Borrower").
This Security Instrument is given to  **NOVASTAR MORTGAGE, INC., A VIRGINIA CORPORATION**

which is organized and
existing under the laws of  **THE STATE OF VIRGINIA**
and whose address is  **23046 AVE. DE LA CARLOTA, 3FL, LAGUNA HILLS, CA 92653**

("Lender").
Borrower owes Lender the principal sum of  **ONE HUNDRED TWO THOUSAND AND NO/100************************
******************************************************** Dollars**
(U.S.  **$102,000.00**       ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**MAY 1, 2014.**             This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note: (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument: and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender
the following described property located in  **CHAMPAIGN**                                County, Ohio:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

**AP #: 20-24-00-01-27-008-00**

which has the address of  **121 SOUTH HIGH STREET, SAINT PARIS**
                                                                          [Street, City],
Ohio   **43072**              ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All
of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

O.R.  **274** PAGE  **5**

OHIO - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT                          Initials: _____
ODI-6R(OH) (9403) 01 Amended 3/94 Form 3036 9/90      Page 1 of 5                    OHVDEED  809

APR-16-98 07:11    FROM-NOVA STAR                                    T-540   P.08/36   F-733

LOAN #: 99-002401

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.                                                                                                    O.R. 274 PAGE 6

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date

OHIO - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT                              Initials: _DW_
ODI-6R(OH) (9403).01 Amended 3/94 Form 3036 9/90            Page 2 of 5                    OHVDEED

APR-16-99 07:13     FROM-NOVA STAR                                     T-540  P.09/36  F-733

LOAN #: 99-002401

of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.                  O.R.    2 7 4 PAGE    7

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

APR-16-99  07:16     FROM-NOVA STAR                                    T-540   P.11/36   F-733

LOAN #: 99-002401

[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☒ Other(s) [specify] PREPAYMENT RIDER | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Suzanne Sluth_
SUZANNE SLUTZ

_B. Huelsman_

_Debbie Wickline_
DEBBIE WICKLINE

STATE OF OHIO,                          CHAMPAIGN County ss:

On this  16th  day of  APRCL , 1999              before me, a Notary Public in and for said County and State, personally appeared  DEBBIE WICKLINE

the individual(s) who executed the foregoing instrument and acknowledged that _____ SHE _____ did examine and read the same and did sign the foregoing instrument, and that the same is _____ HER _____ free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

_B. Huelsman_
Notary Public

Brian Huelsman, attorney at law
NOTARY PUBLIC, STATE OF OHIO
My Commission has no expiration date
section 147.03 O.R.C.

This instrument prepared by:
NOVASTAR MORTGAGE,
INC.

(Seal)

OHIO - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
ODI-6R(OH) (9403).01 Amended 3/94 Form 3036 9/90          Page 5 of 5                    OHVDEED

O.R.    274 PAGE        9

Exhibit A

Legal Description

**File Number:** 1990295

Tract III: Situated in the County of Champaign in the State of Ohio and in the Village of St. Paris and being a part of Lot 2 of S.T. McMorran's Addition the the Village of St. Paris, as recorded in Plat Book B, page 113, and further bounded and described as follows:

Beginning at an iron pin found at the Northwest corner of the intersection of Jefferson Street and College Street; thence North 89 deg. 09' 45" West for 115.17' along the North line of College Street to an iron pin set at the Southeast corner of Lot 2; thence North 6 deg. 18' 55" East for 131.79' along the East line of Lot 2 an iron pin set marking the place of beginning; thence North 89 deg. 90' 45" West for 110.96' to an iron pin set on the West line of Lot 2 and the East line of Monroe Street; thence North 7 deg. 11' 55" East for 108.73' along said lot line and street line to an iron pin set at the Northwest corner of Lot 2; thence South 81 deg. 44' East for 108.85' along the North line of Lot 2 to an iron pin set at the Northeast corner of Lot 2; thence South 6 deg. 18' 55" West for 94.55' along the East line of Lot 2 to the iron pin marking the true place of beginning. Containing a total of 0.256 acres and subject to all legal easements, rights of way and restrictions of record.

Tract IV: Situate in the Village of St. Paris, in the County of Champaign and State of Ohio and bounded and described as follows:

Being Lot Number Five (5) of the S.T. McMorran's Addition as recorded in Plat Book B, page 113 of the Plat Records of Champaign County, Ohio.

*End Of Legal Description*

## IN THE COURT OF COMMON PLEAS OF CHAMPAIGN COUNTY, OHIO

DEBORAH L. THORNBURG,
s/k/a DEBBIE WICKLINE
121 South High Street
St. Paris, Ohio 43072

      and

TIMOTHY THORNBURG
121 South High Street
St. Paris, Ohio 43072,



              PLAINTIFFS,

      -vs-

OCWEN LOAN SERVICING, LLC
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

      and

NOVASTAR MORTGAGE, INC.
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

      and

LITTON LOAN SERVICING, L.P.
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215,

             DEFENDANTS.

CASE NO.

Judge Nick A. Selvaggio

**PRAECIPE FOR SERVICE**

To the Clerk:

     Please issue Summons and serve the following Defendants with a copy of the Complaint by **Certified Mail, Return Receipt Requested** at:

1

OCWEN LOAN SERVICING, LLC
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

and

NOVASTAR MORTGAGE, INC.
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

and

LITTON LOAN SERVICING, L.P.
c/o CSC- Lawyers Incorporating Service
(Corporation Service Company)
50 W. Broad Street, Suite 1800
Columbus, Ohio 43215

Respectfully submitted,

Steven R. Fansler (#0000644)
212 N. Detroit Street
P. O. Box 764
West Liberty, Ohio 43357-0764
Phone: (937) 465-5056
Fax: (937) 465-9880
Email: sfanslerlaw@ctcn.net
Attorney for Plaintiffs

2

PENNY S. UNDERWOOD
CHAMPAIGN COUNTY CLERK OF COURTS
200 N MAIN ST
URBANA OH 43078-1642



7112 4369 4680 3012 3181

2014 CV 00074

LITTON LOAN SERVICING LP
C/O CSC LAWYERS INCORPORATING
SERVICE
CORPORATION SERVICE COMPANY
50 W BROAD STREET SUITE 1800
COLUMBUS, OH 43215





CERTIFIED MAIL

UNITED STATES POSTAGE
PITNEY BOWES

02 1M          $ 06.90⁰
0008003209     APR 25 2014
MAILED FROM ZIP CODE 43078