**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH L. THORNBURG, et al. | § | |
| | § | |
| Plaintiffs, | § | CASE NO. 3:14-cv-00166 |
| | § | |
| v. | § | JUDGE THOMAS M. ROSE |
| | § | |
| OCWEN LOAN SERVICING, LLC, et al. | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)
AND SUPPORTING MEMORANDUM**

---

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Litton Loan Servicing, LP ("Litton") (collectively "Defendants") respectfully move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint of Plaintiff Deborah L. Thornburg s/k/a Debbie Wickline and Timothy Thornburg (collectively "Plaintiffs") with prejudice because the Complaint fails to state a claim against Defendants.  In support of this motion, Defendants submit the following.

I.     <u>INTRODUCTION</u>

Plaintiffs commenced this civil action on April 25, 2014, by filing their Complaint in the Court of Common Pleas for Champaign County, Ohio, as case number 2014 CV 74.  Defendants timely filed their Notice of Removal pursuant to 28 U.S.C. § 1446(b) invoking this Court's original federal question jurisdiction under 28 U.S.C. § 1331.  Though denying each substantive allegation in the Complaint and noting that Plaintiffs fail to identify a single legal basis for their

1

lawsuit, Defendants elected to proceed in federal court because the allegations in Plaintiffs' Complaint clearly purport to state claims arising under federal law.  Defendants now move this Court to dismiss the Complaint, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), because the Complaint contains no well-pleaded allegations that plausibly state a prima facie claim under any identifiable legal theory.

In their Complaint, Plaintiffs plead four separate causes of action suggesting, albeit obliquely, violations under a variety of consumer protection statutes: the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), the Real Estate Settlement Procedures Act (RESPA), and other unspecified federal and state laws and regulations.  The Complaint contains 40 separate allegations along with a four-part prayer for relief, yet it provides insufficient factual content to satisfy the minimum threshold requirement of legal plausibility under *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1995, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Indeed, the Complaint fails to articulate— even in a conclusory fashion—any cognizable claim or contention having legal significance.  In sum, the Complaint fails outright to state a claim for relief under Rule 8(a) and, in consequence, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety and with prejudice.

## II.  PLAINTIFFS' ALLEGATIONS AND PRAYER FOR RELIEF

As noted, Defendants do not agree, in general, with the facts and conclusions alleged by Plaintiffs in their Complaint.  For purposes of this motion, however, Defendants acknowledge that all well-pleaded allegations will be taken as true and viewed in the light most favorable to Plaintiffs.  Following is a summary of the facts and causes of action alleged by Plaintiffs in their Complaint.

Plaintiff Deborah L. Thornburg (formerly Debbie Wickline) owns residential real property situated in the Village of St. Paris, Ohio; her spouse, Plaintiff Timothy Thornburg, has

dower rights in and to that property. (Compl. ¶¶ 1 and 2.)  Ms. Thornburg purchased the property in April 1999 using funds from a mortgage loan originated by Novastar in 1999 (Compl. ¶ 5.) The loan was assigned to Litton, and later to Ocwen. (Compl. ¶¶ 5 and 6.)  It balloons on May 1, 2014, and Ms. Thornburg is trying to refinance her debt to meet that deadline. (Compl. ¶¶ 23, 28; Prayer for Relief ¶¶ B and C.)

For their first cause of action (purporting violations under the TILA), Plaintiffs allege that at the time the mortgage loan was originated, in April 1999, Defendants "Novastar and/or Litton" failed to provide Ms. Thornburg with certain documents and information relating to the loan and mortgage.  According to the Complaint, the documents and information not provided at the time of origination included closing papers and amortization schedules as well as other documents and information relating to the terms of the loan, competitive interest rates, and the conditions under which the interest rate of the loan would be subject to change during the life of the loan. (Compl. ¶¶ 7-14.)  All of the acts and omissions alleged under Plaintiffs' first cause of action must have occurred, if at all, at the time the loan was originated, more than 15 years ago. (Compl. ¶¶ 7-14; 5).

For their second cause of action (purporting violations under the FCRA), Plaintiffs allege that, after closing, Defendant Novastar assigned or transferred the mortgage loan to other parties including but not limited to Defendant Litton, and that "[a]t some point Ocwen is or claims to be [sic] the loan servicer for this loan." (Compl. ¶¶ 16 and 17.)  The Complaint alleges further that at some unspecified time Ocwen took steps which "ruined, lessened, or otherwise negatively impacted" Ms. Thornburg's credit, including providing unwarranted foreclosure and insurance coverage notices and making an incorrect determination that a bankruptcy had prevented her from refinancing or modifying her loan. (Compl. ¶¶ 18-21.)  According to the Complaint, these

3

"specifically prohibited" actions on the part of Ocwen "somehow were reported to credit reporting agencies" and thus "directly and negatively" impacted Ms. Thornburg's ability to make good on the May 1, 2014 balloon payment coming due under the loan. Plaintiffs contend Ocwen "knew or should have known" its actions would negatively impact Ms. Thornburg's ability to refinance the loan, and they seek damages "in an amount to be determined upon further hearing." (Compl. ¶¶ 22-29.) The Complaint provides no indication as to when any of this alleged misconduct occurred, whether Plaintiffs ever filed a credit dispute with a credit reporting agency, or whether Ocwen was ever notified by a credit reporting agency of any dispute involving Ms. Thornburg's credit information.

For their third cause of action (purporting violations under RESPA), Plaintiffs assert that Ms. Thornburg personally and through counsel made various requests of Ocwen for documents, but received only limited documents in response. (Compl. ¶¶ 31-32.) In particular, Plaintiffs assert Ocwen failed to provide closing documents, failed to produce documents "utilized by the company in making a claim that a bankruptcy had an impact upon her loan or her creditworthiness," failed to "show a basis for its letter threatening foreclosure," and failed to "supply proof that it had a reasonable basis to believe that insurance had lapsed on the loan in question." (Compl. ¶¶ 32-35.) Plaintiffs assert Ocwen's alleged failings caused Ms. Thornburg to be unable to determine the correct payoff figures for the mortgage loan and frustrated her attempts to refinance. (Compl. ¶¶ 37-38.) The Complaint provides no indication as to when the purported requests for documents were made, in what form the requests were made (orally or in writing), or the manner in which Ocwen responded to any such requests.

For their fourth cause of action, Plaintiffs allege that Ocwen made and published material misrepresentations that were "malicious, fraudulent, violation [sic] of consumer protection laws,

both in Ohio and pursuant to federal regulation." (Compl. ¶¶ 39-40.)  This, they assert, provides the basis for punitive damages, attorney fees, and treble damages.  The Complaint contains no further information about the alleged misconduct and states no legal or factual grounds for Plaintiffs' allegations.

In their prayer for relief, Plaintiffs assert they are entitled to affirmative injunctive relief—*i.e.,* an order compelling Ocwen to produce certain loan documents, delaying the May 1, 2014, refinance date, and directing that all escrow payments be paid into court—along with monetary damages, punitive damages, attorney fees, and costs. (Compl., Prayer for Relief, ¶¶ A-D.)

## III.    RULE 8 AND 12(B)(6) PLEADING REQUIREMENTS

To satisfy the minimum pleading requirements of Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  It must also contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F. 2d 434, 436 (6th Cir. 1988) (citations omitted).  Although Rule 8 does not require a plaintiff to set out every particularity of her case, the rule does require more than mere "unadorned, the-defendant-harmed-me" accusations. *See Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F. 3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677), *cert. denied*, 132 S. Ct. 1583 (2012).  "Determining whether a complaint states a plausible claim for relief [is] a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 556 U.S. at 679.

## IV.    ARGUMENT AND AUTHORITIES

Plaintiffs' Complaint contains no allegations of a plausible claim and thus fails "to raise a reasonable expectation that discovery will reveal evidence" of any alleged wrongdoing. *See Twombly*, 550 U.S. at 556. The Complaint presents this Court with little more than guesswork. It is replete with vague assertions and conclusions which provide no factual framework upon which a valid claim of in kind could be inferred. Even under the most liberal standard for legal plausibility, the Complaint contains insufficient factual content to address the operative elements of any cause of action. In fact, the Complaint provides no basis for inferring that any cause of action might actually be borne out under the facts as alleged. Plaintiffs therefore fail to state a conceivable claim for relief, and they fall far short of the "legal plausibility" mark. *See Twombly*, 550 U.S. at 570 (stating that where the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Litigants and judges should not be expected to root out the allegations of a complaint, particularly where, as here, the factual content is abjectly insufficient to state a claim under any identifiable legal theory.

**A.    Plaintiffs fail to state a claim under TILA because the Complaint contains no allegations showing that a TILA action can be brought against Defendants or that any claim is viable under the applicable statute of limitations.**

Plaintiffs insinuate violations under TILA as their first cause of action. (Compl. ¶¶ 7-14.) TILA, 15 U.S.C. § 1601 *et seq.*, was enacted to assure meaningful disclosure of credit terms so that consumers can more readily compare the various credit terms available and to protect the consumer from inaccurate and unfair practices. *See* 15 U.S.C. § 1601(a). The statute of limitations under the TILA is one year for damages claims and three years for rescission claims.

6

*See* 15 U.S.C. § 1640(e) (damages); 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(3) (rescission). The TILA statute of limitations "begins running on the date of the occurrence of the violation, that is, 'when lender and borrower contract for the extension of credit.'" *Ford v. New Century Mortgage Corp.*, 797 F. Supp. 2d 862, 868 (N.D. Ohio 2011) (quoting *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973)).

In their Complaint, Plaintiffs allege that at the time the mortgage loan was originated in April 1999—more than 15 years ago—the originating lender failed to provide Ms. Thornburg with certain documents and information about the loan and mortgage. In paragraphs 9 and 10 of the Complaint, Plaintiffs identify the originating lender as "Novastar Mortgage, Inc. and/or Litton loan Servicing, L.P." This identification is belied, however, in paragraphs 5 and 16 of the Complaint, where Plaintiffs admit that the mortgage loan was assigned or transferred to Litton after closing.

As Plaintiffs correctly assert in paragraphs 5 and 16 of the Complaint, Novastar was the originating lender; neither Litton nor Ocwen was involved with the loan at the time. Also, as Plaintiffs correctly assert in their Complaint, all of the alleged TILA violations would have occurred, if at all, more than 15 years ago when the loan was originated by Novastar. (Compl. ¶¶ 5; 7-14). Thus, on the face of it, the Complaint fails to state a TILA claim against either of the moving parties (Litton or Ocwen).[1] Moreover, the Complaint contains nothing to plausibly show how a claim under TILA could possibly be viable besides. Based on even the most charitable

---

[1] Notably as well, TILA has no application here because the law applies only to lending activities and credit transactions. *See* 15 U.S.C § 1640(a) (restricting civil liability for TILA violations to creditors) and 15 U.S.C. § 1638(b)(2) (MDIA provision amending TILA and regulating the extension of credit secured by a consumer's dwelling). The moving parties, Litton and Ocwen, are loan servicers, not creditors, as they neither extend nor participate in the decision to extend credit. In fact, loan servicers are expressly exempted from liability under TILA. 15 U.S.C. § 1641(f).

reading of the well-pleaded facts, the limitations period for any conceivable TILA claim would have long since expired.[2]  In view of the foregoing, Plaintiffs' first cause of action should be dismissed.

**B.    Plaintiffs fail to state a claim under the FCRA because the Complaint contains no allegations addressing the essential statutory elements of a private right of action under the Act.**

Plaintiffs insinuate violations under the FCRA as their second cause of action. (Compl. ¶ 15-29.)  Congress enacted the FCRA, 15 U.S.C. § 1681 *et seq.*, "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (citations omitted).  The Act imposes certain duties on "furnishers" of credit information, as specified in 15 U.S.C. § 1681s-2(a) and (b).  These duties fall into two categories: § 1681s-2(a) lays out a general duty to provide accurate information, and subsection § 1681s-2(b) prescribes duties triggered only after a furnisher receives notice from a credit reporting agency ("CRA") of a credit information dispute.

Here it must be presumed that Plaintiffs' FCRA claim is based on 15 U.S.C. § 1681s-2(b), as that subsection is the only part of the Act which conceivably provides a private right of action against furnishers of credit information.[3]  Subsection (b) provides in pertinent part as follows:

(b) Duties of furnishers of information upon notice of dispute

---

[2] As previously noted, the statute of limitations under TILA is one year for damages claims and three years for rescission claims. *See* 15 U.S.C. § 1640(e) (damages); 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(3) (rescission) and "begins running on the date of the occurrence of the violation, that is, 'when lender and borrower contract for the extension of credit.'" *Ford v. New Century Mortgage Corp.*, 797 F. Supp. 2d 862, 868 (N.D. Ohio 2011) (quoting *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973)).

[3]  A majority of the courts presented with the issue have recognized a private right of action for violations under 15 U.S.C. § 1681s-2(b).  There are, however, authorities to the contrary.

(1)     In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A)     conduct an investigation with respect to the disputed information;

(B)     review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)     report the results of the investigation to the consumer reporting agency;

(D)     if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)     if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i)     modify that item of information;

(ii)     delete that item of information; or

(iii)     permanently block the reporting of that item of information.

Assuming 15 U.S.C. § 1681s-2(b) creates a private right of action against furnishers of credit information, any complaint alleging such an action would still have to be pleaded to address the minimum statutory elements. The statute plainly contemplates that a violation occurs only where a furnisher has willfully or negligently failed to reinvestigate and take appropriate action after receiving notice of a credit dispute from an intermediary CRA. *See id*.; *see, also, In*

*re Nelson v. Chase Manhattan Mortg. Corp.*, 282 F. 3d 1057 (9th Cir. 2002).[4]  Plaintiffs here have alleged insufficient facts to plausibly show that the conditions precedent for a private action as delineated in the statute were ever satisfied.  They do not allege that Defendants willfully or negligently failed to reinvestigate or take appropriate action after receiving notice of a credit dispute from a CRA.  In fact, they do not even allege that Defendants received any notice at all from a CRA of a credit dispute or that Plaintiffs ever filed a dispute with a CRA in the first place.

A plaintiff alleging violations of § 1681s–2(b) may only bring a private cause of action if the plaintiff can "show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed…" *Downs v. Clayton Homes, Inc.*, 88 Fed. App'x 851, 853–54 (6th Cir.2004) (citing *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639–40 (5th Cir.2002)).  Plaintiffs' failure to address, in any discernable way in their Complaint, these essential statutory elements is fatal to their FCRA claim. *See, e.g., Ali v. Capital One*, 2012 WL 260023, *1 (holding pleading insufficient under FCRA where plaintiff failed to allege "what procedures defendant failed to follow"); *King v. Equifax Info. Serv.*, 2005 WL 1667783 (S.D. Tex. 2005) (holding  pleading insufficient under FCRA where plaintiff failed to allege that a CRA notified the furnisher of the dispute and merely alleged the consumer himself notified the furnisher); *Massey v. MBNA America Bank, N.A.*, 2005 WL 3099011 (W.D. Ky. 2005) (holding pleading insufficient where plaintiff failed to allege furnisher of credit information ever received notice of dispute from CRA); *Young v. Equifax Credit Information*

---

[4] In *Nelson*, the 9th Circuit appeals court reasoned that although a consumer has a private right of action under § 1681s-2(b) and §§ 1681n-1681o, that right is triggered by notice to a furnisher from an intermediary CRA.  The court explained that "Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished." *Id.*

*Serv., Inc.*, 294 F. 3d 631 (5th Cir. 2002) (holding plaintiff's FCRA claims against furnisher of credit information failed as a matter of law because there were no allegations showing that the notice requirements were met).

Furthermore, the FCRA plainly preempts any claim brought under a state law regulating the duties of furnishers of credit information. See 15 U.S.C. § 1681t(b)(1)(F); see, also, *Shugart v. Ocwen Loan Serv., L.L.C.*, 747 F. Supp. 2d 938, 943-44 (S.D. Ohio 2010). Therefore, to the extent Plaintiffs' fourth cause of action seeks relief for credit reporting misconduct under any Ohio consumer protection law or regulation, the claim is pre-empted.

In view of all of the foregoing, Plaintiffs' second cause of action should be dismissed.

### C. Plaintiffs fail to state a claim under RESPA because the Complaint contains no allegations addressing the essential statutory elements of the Act.

Plaintiffs insinuate violations under RESPA as their third cause of action. (Compl. ¶ 30-38.) RESPA, 12 U.S.C. § 2601 *et seq.*, was enacted to reform the real estate settlement process to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *See* 12 U.S.C. § 2601(a); *Marais v. Chase Home Fin. LLC*, 736 F. 3d 711, 719 (6th Cir. 2013). RESPA regulates the services that lenders provide in connection with a real estate settlement, including matters such as title searches, title insurance, preparation of documents, origination of federally subsidized mortgage loans, closing and settlement, and other such services. *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2038, 182 L. Ed 2d 955 (2012) (*citing* 12 U.S.C. § 2602(3)).

With respect to loan servicers in particular, the Act imposes certain requirements for responding to a proper information request, called a "qualified written request" ("QWR"), from a

11

borrower. The Act defines a QWR as "a written correspondence, other than a notice on a payment coupon or other payment medium supplied to the servicer, that—"

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). The Act also prescribes the manner in which a loan servicer is to respond to a QWR:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

> (ii)    the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).   Accordingly, based on the statutory language, in order to state a plausible claim against a loan servicer for violating this section of RESPA, a plaintiff must make well-pleaded allegations which, at the very least, support an inference that the defendant loan servicer received a valid QWR and then failed to respond adequately to the QWR within the statutory period.   A plaintiff also must indicate through well-pleaded allegations why she is entitled to actual pecuniary damages caused by an actionable RESPA violation by a loan servicer. *See Ogle v. BAC Home Loans Serv. LP*, 924 F. Supp. 2d 902, 911 (S.D. Ohio 2014) (discussing QWR requirements and actual damages requirements under the RESPA).

Plaintiffs' Complaint here falls far short of the mark.  Plaintiffs allege only that Ms. Thornburg made various requests for documents and received only limited documents from the current loan servicer, Ocwen, in response.  Plaintiffs also assert that Ocwen's failure to provide certain documents caused Ms. Thornburg to be unable to determine the correct payoff figures for the mortgage loan and frustrated her efforts to refinance the loan.

Notably, however, Plaintiffs allege no facts suggesting that a QWR was ever sent to, or received by, Ocwen and no facts indicating how Ocwen failed to respond adequately to any QWR within the statutory period.  They also allege no facts indicating how any actions or omissions on the part of Ocwen caused Plaintiffs to incur recoverable damages under the RESPA.  Accordingly, Plaintiffs fail to allege sufficient facts to support the basic elements of a RESPA claim against Ocwen, impermissibly leaving the parties—and this Court—to fill in the blanks with inferences for which no plausible basis can be found in the Complaint. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (acknowledging that no weight need

be given overly tenuous factual inferences in considering a motion to dismiss); *see also Arroyo v. Bank of America, N.A.*, 2013 WL 3785623 at *3 (N.D. Ga. 2013) (discussing specific pleading requirements for claims against loan servicers under RESPA). In view of the foregoing, Plaintiffs' third cause of action should be dismissed.

### D. Plaintiffs allege violations of unspecified state and federal consumer protection laws; however, their Complaint contains insufficient factual content to provide even the barest notice of the nature or factual basis for any such claim.

For their fourth and final cause of action, Plaintiffs level sweeping allegations of "material misrepresentations" as well as "malicious" and "fraudulent" violations of state and federal consumer protection laws and regulations, and they pray for affirmative injunctive relief along with monetary damages, punitive damages, attorney fees, and costs. Such footless conclusions should not be accepted as true; nor should they be given any presumptive validity. *See Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (stating that a court "need not accept as true legal conclusions or unwarranted factual inferences"). This sort of "shotgun pleading" approach provides absolutely no notice to Defendants of the factual or legal grounds for Plaintiffs' claims and should not be countenanced.

Although Rule 8(a)(2) requires but a "short and plain statement," the rule "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S at 555, n.3. Plaintiffs have made no such showing here, especially in light of the fact that their allegations sound in fraud. Federal Rule of Civil Procedure 9(b) requires that in all averments of fraud the circumstances constituting fraud "shall be stated with particularity." Plaintiffs' fourth cause of action is devoid of well-pleaded generalities—let alone particulars—and thus, on its face, cannot survive.

14

In any event, even assuming the Complaint somehow makes out a prima facie claim for relief under the Ohio Consumer Sales Protection Act (OCSPA)—which it does not—Plaintiffs' claims against Litton and Ocwen are still unavailing.  The OCSPA covers only consumer transactions. *See* R.C. § 1345.01(A).  As held by the Ohio Supreme Court, mortgage loan servicers, such as Litton and Ocwen, do not enter into consumer transactions; they contract with the owner of the mortgage loan. *See Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St. 3d 31, 33 (2013).  "Mortgage loan servicers perform services for financial institutions, not for borrowers, and therefore the transactions are commercial in nature and are not covered by the [OCSPA]." *Id.*  Thus, there can be no cause of action against Litton or Ocwen under the OCSPA. In view of the foregoing, Plaintiffs' fourth cause of action should be dismissed.

In the final analysis, Plaintiffs' Complaint fails to address the operative elements of any claim under any federal or state consumer protection law.  The Complaint is a non-starter under Fed. R. Civ. P 8(a) and therefore must be dismissed under Fed. R. Civ. P 12(b)(6).

## V.  CONCLUSION

For these reasons, Defendants' motion to dismiss should be granted and Plaintiffs' claims against Defendants should be denied in their entirety and with prejudice.

Respectfully submitted,

DINN, HOCHMAN & POTTER, LLC:

/s/ Benjamin D. Carnahan
BENJAMIN D. CARNAHAN (0079737)
HUNTER G. CAVELL (0090567)
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio  44124
(440) 446-1100 – Phone
(440) 446-1240 – Fax
bcarnahan@dhplaw.com
hcavell@dhplaw.com
Counsel for Defendants

15

## <u>CERTIFICATE OF SERVICE</u>

A true copy of the foregoing Motion for Extension was filed via the Court's ECF system on this 17th day of June, 2014.  Parties may access the filing via the Court's electronic filing system.

/s/ Benjamin D. Carnahan
BENJAMIN D. CARNAHAN (0079737)
Counsel for Defendants
